FILED

2014 May-15  PM 12:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **DEDRA RENEA BATTLES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:13-CV-827-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION** | ) |
| | ) |
| **Defendant.** | |

---

## <u>MEMORANDUM OPINION</u>[1]

### INTRODUCTION

Plaintiff Dedra Renea Battles brings this action under 42 U.S.C. § 405(g),

Section 205(g) of the Social Security Act. She seeks review of a final adverse

decision of the Commissioner of the Social Security Administration

("Commissioner"), who denied her application for Disability Insurance Benefits

---

[1]Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on May 15, 2014). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

("DIB"). Ms. Battles timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g). For the following reasons, the court **REVERSES** and **REMANDS** the Commissioner's decision for further consideration in accordance with this opinion.

### STATEMENT OF THE CASE

Ms. Battles was 45 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). *Compare* Tr. 12 *with* Tr. 116. She has completed the twelfth grade. Tr. 197. Her past work experience includes employment as a cashier, stocker, food service worker, knitter, housekeeper, and home health aide sitter. Tr. 171-78. She claims she became disabled on July 26, 2009, due to symptoms associated with degenerative disc disease in her lumbar spine, osteoarthritis in her right knee and neck, and major depression. Tr. 191. Her last period of work ended on that date as well. *Id.*

On September 24, 2009, Ms. Battles protectively filed a Title II application for a period of disability and DIB. Tr. 12. On December 15, 2009, the Commissioner initially denied these claims. *Id.* Ms. Battles timely filed a written request for a hearing on February 23, 2010. *Id.* The ALJ conducted a hearing on the matter on July 6, 2011. *Id.* On January 10, 2012, he issued his opinion concluding Ms. Battles was not disabled and denying her benefits. Tr. 25. She timely petitioned the Appeals

Council to review the decision on January 17, 2012. Tr. 5. On March 22, 2013, the Appeals Council issued a denial of review on her claim. Tr. 1.

Ms. Battles filed a Complaint with this court on May 2, 2013, seeking review of the Commissioner's determination. Doc. 1. The Commissioner answered on August 9, 2013. Doc. 7. Ms. Battles filed a supporting brief (doc. 9) on September 23, 2013, and the Commissioner responded with her own (doc. 10) on October 23, 2013.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal

standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

---

[2]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether the claimant has a severe impairment;

(3)   whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)   whether the claimant can perform his or her past work; and

(5)   whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

5

## ALJ Findings

After consideration of the entire record, the ALJ made the following findings:

1.  Ms. Battles met the insured status requirements of the Social Security Act through June 30, 2013.

2.  She had not engaged in substantial gainful activity since July 26, 2009, the alleged disability onset date.

3.  She had the following severe impairments: lumbar disc bulging with radiculopathy, degenerative disc disease, lumbar spinal stenosis, osteoarthritis, facet hypertrophy, myofascial pain syndrome, neuralgia, trochanteric bursitis, morbid obesity, posttraumatic stress disorder/anxiety disorder, and depressive disorder.

4.  She did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.  She had the residual functioning capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) – except that she needed a job that afforded a sit/stand option; she could not work around unprotected heights; she could not be exposed to concentrated amounts of extreme cold, extreme heat, humidity, or wetness; and she was limited to the performance of non-complex tasks.

6.  She was unable to perform any past relevant work.

7.  She was born on [redacted] and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability date.

8.  She had at least a high school education and was able to communicate in English.

9.  Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework

supported a finding that she was "not disabled," whether or not she had transferable job skills.

10.   Considering her age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that she could perform.

11.   Ms. Battles had not been under a disability, as defined in the Social Security Act, from July 26, 2009, through the date of this decision.

Tr. 14-25.

## DISCUSSION

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[3] However, the court "abstains  from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

## I.   Substantial evidence did not support the ALJ's decision to discredit Ms. Battles's treating physician.

In finding Ms. Battles not disabled, the ALJ crucially afforded "little" weight

---

[3]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

to the assessments offered by her treating physician regarding her mental health. The ALJ instead credited that of a consultative physician who examined Ms. Battles on one occasion. As substantial evidence did not support this decision, it constituted reversible error.

Dr. Don G. Brock began treating Ms. Battles for her psychological issues on (or around) January 28, 2011. Tr. 373. They met together weekly for several months. *Id.* On June 20, 2011, Dr. Brock transmitted a summary of Ms. Battles's counseling records to her counsel. Tr. 371-74. In his cover letter, Dr. Brock offered the following assessment:

> In my opinion, [Ms. Battles] is primarily suffering from major depression as the result of prolonged sexual abuse as a child. There are several things going on with her, but primarily, pituitary-adrenal and autonomic responses to stress as a result of sexual abuse during her childhood.
>
> We are continuing to see her at the Relationship Clinic. Her medical conditions are also contributing to her depression. I cannot speak to her medical prognosis, but she will require long term psychological therapy for her condition.

Tr. 371. In the summary he provided, Dr. Brock noted that Ms. Battles had been previously hospitalized for depression. Tr. 372. He then diagnosed her condition in the following manner:

Axis #1 – Clinical Diagnosis

296.30          Major Depressive Disorder Recurrent

| 302.9 | Sexual Disorder NOS |
| 304.00 | Opioid Dependence |
| 995.53 | Sexual Abuse of a Child, Clinical Attention is on the Victim |

Axis #2 – Personality Diagnosis

| 301.0 | Paranoid Personality Disorder |
| 301.82 | Avoidant Personality Disorder |

Axis #3 – General Medical Condition

Bulging Spinal Disc
Chronic Pain
Degenerative Disc Disease
Sciatica
Scoliosis

Axis #4 – Psychological/Environmental Problems

Housing Problem – Inadequate Housing
Occupational Problem – Unemployment
Other Psychological/Environmental Problem – Involved in a hostility

Tr. 374. Notably, this evaluation included psychological disorders for which Ms.

Battles had not previously been diagnosed. Dr. Brock also gave Ms. Battles a Global

Assessment of Functioning (GAF)[4] score of 48. *Id.* A GAF score of 41–50 indicates:

"Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent

shoplifting) or any serious impairment in social, occupational, or school functioning

---

[4]The Global Assessment of Functioning, or GAF Scale, is a numeric scale that mental health physicians and doctors use to rate the occupational, psychological, and social functioning of adults. *The Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000).

(e.g., no friends, unable to keep a job)." *The Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000).

In his opinion, the ALJ only credited Dr. Brock's diagnosis of major depressive disorder. Tr. 18. He gave "little" weight to the doctor's other psychological diagnoses and to his dire assessment of Ms. Battles's functional abilities. Tr. 23. The ALJ justified his dismissal in the following manner:

> Although Dr. Brock reported in June 2011 that the claimant had several mental impairments in addition to major depressive disorder, his opinion is not consistent with the remainder of the claimant's treating and examining medical records and reports. The claimant's longitudinal treatment records indicate that she has had depressive and anxiety disorders for which she has been treated. She was evaluated at Grand View Behavioral Health Centers in June 2007 and diagnosed only with major depressive disorder, and she was evaluated by Dr. Bentley in November 2009 and diagnosed only with posttraumatic stress disorder and depressive disorder. Dr. Muratta's records have consistently indicated that the claimant had depressive and anxiety disorders and no other mental impairments. The claimant has the severe mental impairments of posttraumatic stress disorder/anxiety disorder, and depressive disorder. She has no other severe impairments.

Tr. 18. Later in his opinion, the ALJ cited similar reasoning in disregarding Dr. Brock's evaluation of Ms. Battles's functional abilities:

> Although Dr. Brock reported on June 20, 2011 that the claimant was suffering from major depression and that she would require long-term psychological therapy, he did not report that the claimant had disabling mental limitations. He provided a summary of his treatment of the claimant, but not his actual treatment records. He reported in that summary that the claimant had a global assessment of functioning of 48, indicating serious consistent symptoms, but this is inconsistent with the remainder of the record, including the claimant's

treating medical records and the report of Dr. Bentley. As was discussed above, the record establishes that the claimant has the severe mental impairments of posttraumatic stress disorder/anxiety disorder, and does not establish that she has any other severe mental impairment. Although Dr. Brock's opinion that the claimant suffered from major depression is consistent with the record, his opinions otherwise are not, and are therefore afforded little weight. The claimant has no more than moderate mental limitations that limit her to noncomplex job tasks, consistent with the above-stated functional capacity.

Tr. 22-23. As noted, the ALJ relied partially on the opinion of Dr. Jack L. Bentley, Jr., to discredit Dr. Brock's assessment. Indeed, he gave Dr. Bentley's opinion "good" weight because he deemed it consistent with Ms. Battles's treatment records. Tr. 22. Notably, Dr. Bentley examined Ms. Battles on one occasion – November 12, 2009. Tr. 241.

This treatment of the medical opinion evidence constituted reversible error. The opinion of a treating physician "must be given substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhard*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotation marks omitted). "Good cause" exists when:

- the treating physician's opinion is not bolstered by the evidence;

- the evidence supports a contrary finding; or

- the treating physician's opinion is conclusory or inconsistent with his or her own medical records.

*Id.* at 1241 (citation omitted). The ALJ must clearly articulate his or her reasons for

disregarding a treating physician's opinion, and the failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citation omitted); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). However, when the ALJ adequately states specific reasons for doing so, <u>and those reasons are supported by substantial evidence</u>, there is no such error. *Moore v. Barnhart*, 405 F.3d 1208, 1212-13 (11th Cir. 2005) (per curiam).

Here, the ALJ stated specific reasons for his decision to discredit Dr. Brock's opinions.  As detailed above, the ALJ concluded that Dr. Brock's diagnosis of Ms. Battles's impairments and of her functional ability contradicted other parts of her medical record. Specifically, none of her other physicians had concluded that she had severe mental impairments outside of post-traumatic stress disorder and major depressive disorder. Tr. 18. The ALJ also faulted Dr. Brock for not provided the full extent of his treatment records (rather than just a summary). *Id.*; Tr. 23. Moreover, none of Ms. Battles's physicians – including Dr. Brock – claimed that Ms. Battles was actually disabled by her psychological impairments. Tr. 23.

The ALJ was thus adequately specific in outlining his reasons for discrediting Dr. Brock. After reviewing the record, however, the court does not find that substantial evidence supports his reasons. First, the ALJ ignored significant record

evidence suggesting that Ms. Battles had psychological impairments extending beyond post-traumatic stress disorder and major depressive disorder. Her hearing testimony attested to this possibility. She and her attorney had the following relevant exchange:

> Q    Okay. I think you told me earlier that you get nervous, in general, being around a lot of people; is that right?
>
> A    Yes, sir. But men is real bad.
>
> Q    All right. And when you tell me when you see somebody talking, you're not real sure what they're talking about; sometimes --
>
> A    I think it's me.
>
> Q    You assume that they're talking about you. has that been going on very long?
>
> A    Yes, sir.

Tr. 72. Furthermore, even Dr. Bentley reported that she had previously suffered "severe mood swings and periodic episodes of both homicidal and suicidal ideation." Tr. 241.

More fundamentally, though, the ALJ's assessment overlooks the dynamic nature of Ms. Battles's condition. He highlights the fact that none of her previous doctors had diagnosed her as drastically as Dr. Brock did in 2011. This should not be surprising. The record makes clear that Ms. Battles's health was progressively

deteriorating before and after her claimed disability onset date. On July 14, 2011, Dr. Paul Muratta – another one of her treating physicians – wrote, "Her prognosis is poor. Her condition is chronic and will likely deteriorate over time. Her diagnostic studies confirm that her condition has progressively worsened since 2008, when her first studies were available to us." Tr. 376. This is presumably why he recommended that she seek psychological treatment with Dr. Brock. Tr. 22. She had admittedly been reluctant to obtain such treatment in the past. But, as Dr. Muratta's notes indicate, this seems more likely attributable to her stated fear of discussing such matters with men. *See* Tr. 377. The relative absence of such therapy in her background should therefore not undermine her disability claims.

Ultimately, Dr. Brock was the only physician on record who treated Ms. Battles regularly – and specifically – for her psychological afflictions. He met with her frequently over a long duration of time. He then formally diagnosed her in 2011 with several serious psychological disorders surpassing those previously found in her record. And he assessed her with a dire GAF score that indicated she was suffering from severe functional limitations that may or may not have manifested themselves beforehand.

The ALJ then dismissed these evaluations mainly because (1) they did not cohere with what appeared earlier in her record and because (2) Dr. Brock did not

formally diagnose her as disabled. These justifications do not count as "substantial" evidence, either individually or collectively. Again, substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* 703 F.2d at 1239. A reasonable person would defer to the conclusions of a treating physician like Dr. Brock who specialized in psychological care and who met with Ms. Battle on a weekly basis over a long period of time – <u>and</u> was the only physician of record to do so. That Dr. Brock's diagnoses of an ailing claimant like Ms. Battle differed from those made years beforehand does not alter this conclusion. "In cases involving mental illness, the opinions of mental health professionals are especially important." *Barber v. Barnhart*, 459 F. Supp. 2d 1168, 1173 (N.D. Ala. 2006).

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that substantial evidence does not support the Commissioner's final decision. Accordingly, the decision will be reversed and remanded by separate order.

**DONE** and **ORDERED** this the 15th day of May, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge